United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TYLER JOHN REDICK,

Petitioner,

v.

MARTIN BITER,

Respondent.

Case No. 12-cv-00337-WHO

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Re: Dkt. No. 11

## INTRODUCTION

Petitioner Tyler Redick was convicted by a jury in the California Superior Court, County of San Mateo for robbery, among other charges.  The jury also found true the allegation under a state firearm enhancement statute that Redick had used a gun during the robbery.  The trial court sentenced Redick to 18 years and 2 months in state prison.  The bulk of Redick's sentence is attributable to the firearm enhancement, which added more than thirteen years to his sentence. Redick challenges his conviction and sentence on the grounds that:  (i) as applied to his case, the firearm enhancement constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments; (ii) the prosecution knowingly presented false testimony in violation of the Fourteenth Amendment; and (iii) he received ineffective assistance of counsel at trial in violation of the Sixth Amendment.[1]  For the reasons discussed below, Redick's petition is DENIED.

---

[1] Redick's habeas petition was filed pro se and states five claims without identifying the constitutional bases for any of them.  Pet. 7B–7G (Dkt. No. 11).  In his reply brief, Redick clarifies the constitutional bases for his claims and withdraws the claim that the prosecution failed to timely disclose material exculpatory evidence. Reply 3 (Dkt. No. 35).  Two of Redick's remaining claims rest on the same allegations and can be addressed together (claim four – that the victims gave false testimony at trial; and claim five – that the prosecution knowingly presented false testimony). Reply 17, 22.  Accordingly, the discussion section of this order is organized into three subparts.

# BACKGROUND

## I. FACTUAL BACKGROUND

In May 2008, Redick was involved in a robbery. *People v. Redick*, No. A125634, 2010 WL 3312901, at *1-3 (Cal. Ct. App. Aug. 24, 2010). He was arrested, convicted, and sentenced to serve 18 years and two months in state prison. *Id.* The California Court of Appeal denied Redick's direct appeal. The following facts are excerpted from the Court of Appeal's decision and are supplemented with information that Redick provided to the California Supreme Court during his state habeas proceedings.

> On May 16, 2008, four high school students, Derek Honig, Randy Rios, Luis Martinez, and Joseph Murtagh, were seated in a car in a parking lot.[2] Two male adults wearing white T-shirts and black bandanas approached. One of them went to the driver's side, and the other, to the passenger side. The male who went to the driver's side, who the students later identified as defendant [(i.e., Redick)], displayed a firearm.[3] He warned the students [that] brandishing the gun was not "a joke" and demanded their money.
>
> Honig was sitting in the driver's seat. When he handed defendant $2, defendant hit him in the eye with the butt of the gun. Defendant then turned his attention to Martinez, who was seated behind Honig. Martinez handed over his wallet, and the gunman punched or pushed him. Murtagh was sitting in the right front passenger seat. He gave approximately $180 to the other masked man standing on his side of the car. Rios also gave $5 to this man.[4]
>
> Suddenly, defendant's mask fell off. He seemed shocked, and asked his partner: "What should we do with them? My mask fell. They could see our face. What should we do?" He paused for about five seconds and then said: "Let's just go." Rios was frightened when defendant said, "They seen my face." Then defendant and the other man ran away. They jumped into a white Buick and drove off. Honig followed the Buick, and Rios called 911.
>
> The four students gave up following the Buick, met some police officers in a parking lot, and then went to the police station. There, they informed Officer McLaughlin the white Buick was an older model with distinctive rectangular rear lights. Another officer stated he had recently stopped a vehicle matching that description, and recalled the driver was named Jake Guinn. Officer McLaughlin went back to the area where the robberies occurred and located a man who had a video surveillance system. The video did not show the robbery, but did show two individuals getting into a white Buick. Officer McLaughlin was able to identify Jake Guinn on the video. He could not determine whether the other person was

---

[2] Redick asserts that he and his accomplice, Jake Guinn, saw the students purchase marijuana before the robbery and followed the students to the parking lot in order to steal the marijuana. Pet. 7F.

[3] Redick denies using a gun during the robbery. Pet. 7C. As proof, he includes a supporting declaration from Guinn. Pet. Ex. A. The declaration is discussed in more detail below.

[4] Redick alleges that he obtained a quantity of marijuana from the students in addition to the money. Pet. 7E.

defendant, but he saw some similarity and he knew Guinn and defendant were friends.[5]

On May 16, 2008, Officer McLaughlin showed each of the students a photo lineup that included a picture of defendant.  All but Murtagh identified defendant as one of the robbers.

On May 17, 2008, between 2:00 and 3:00 a.m., Officers McLaughlin, Morrison and others went to defendant's father's house.  Defendant's father, Fred Redick, told them defendant was living with his girlfriend Jessica.  While the officers were still there, Fred Redick discovered his .357–Magnum was missing from his nightstand.  He estimated the weapon was worth between $400 and $500.  He agreed to take the officers to Jessica's residence in Foster City.

When the officers arrived at Jessica's house, Jessica's mother and other family members told them defendant shared a room with Jessica, and they gave permission to search Jessica's room. [. . .]

The officers found a backpack on the bed.  It contained a black and white bandana, a .357–Magnum, and documents bearing defendant's name and photograph.  The backpack also contained three notebooks, with notes in defendant's handwriting setting forth several variations of a plan to rob a bank.  Fred Redick testified the gun found in defendant's backpack was "apparently" the one missing from his nightstand.  Honig and Rios also testified the gun looked exactly like the one defendant used in the robberies.

On May 17, 2008, at around 9:00 or 10:00 a.m., defendant met with Jessica, and told her he was in trouble with the police. Defendant said others were also involved.  Her testimony was equivocal as to whether defendant said he had used a gun himself.  She testified he "mentioned a gun," and also told her he did not "hurt or shoot anyone."  She testified she understood him to mean "he used [a gun] to scare someone," but also denied he explicitly said "he had one on him."  When Jessica asked him why the police were at her house the night before, defendant told her the gun might be at her house.  He added he might not be seeing her for a while.

In the meantime, the police were still looking for defendant and had information he might be in the area with Jessica.  As defendant was talking to Jessica, Officer Sealy approached on foot.  When defendant saw him he broke into a run.  Defendant ignored Officer Sealey's orders to stop as the foot chase continued.  Officer Sealey temporarily lost sight of defendant and then saw him reaching into the driver's side of a white Honda Accord.  The driver was blowing his horn.  When defendant caught sight of Officer Sealy he began running again.

The driver of the Accord, Jeff Frediani, testified he saw defendant jogging toward him and thought something was wrong.  In response to defendant's signal he rolled down his window, and defendant opened the door.  Defendant shouted: "Get the fuck out."  He grabbed Frediani's hands and tried to pull him out.  When Frediani successfully resisted, defendant ran to another car, and tried to enter it but it was locked.  He then ran off with a police officer in pursuit on foot.  Other officers arrived on the scene and arrested defendant.

---

[5] At trial, Officer McLaughlin testified that "in his view, the surveillance video showed two people in the white Buick and that both men, which included the driver, exited." Answer 24, Ex B at 476.  Guinn states in his declaration that "Tyler [Redick] and another guy got out while I stayed with my car."  Pet. Ex. A.

United States District Court
Northern District of California

While defendant was in jail, a routine search of his cell produced notes in his handwriting in which he spoke of getting the charges dropped by getting his friends to persuade potential witnesses to say "it wasn't [him] by any means necessary!" The notes also urged members of Jessica's family to deny he lived in Jessica's room where the police found the backpack.

In court, all four students identified defendant as the person whose mask fell off. Rios and Martinez stated they were "100 percent" certain, or had "no doubt" defendant was the one with the gun. The other male who robbed them was shorter, and Latino or Filipino with a darker complexion than defendant.

*Redick*, 2010 WL 3312901, at *1-3 (footnotes omitted).

After the Court of Appeal issued its opinion, Redick obtained a declaration from Guinn. Pet. Ex. A. The relevant portion of the declaration states:

On May 16, 2008 I[, Jake Guinn,] was together with Tyler Redick in the incident involving Derek Honig, Randy Rios, Luis Martinez and Joseph Murtagh. I was interviewed by the Foster City Police about my involvement and I later turned myself in to them. I was charged with crimes, prosecuted in Court, and sentenced to serve jail time and to be on probation and I am still subject to that probation.

[ . . . ]

On the evening of May 19, 2008, we were sitting in my car outside a party in an out of the way and residential part of Foster City when we noticed Derek Honig, Randy Rios, Luis Martinez and Joseph Murtagh drive by. This car caught our attention because it was a car we didn't recognize with four young guys our age and it was unusual for outsiders to be in that part of town. They stopped at a location we could see and at which we knew you could buy marijuana. They appeared to deal with someone at that location in the way we knew weed was sold. Someone approached the car, stood beside it for a few minutes leaning in to the passengers, and then the car drove off.

When their car drove away, we felt sure there was now weed in that car. We made a decision in our car to follow that car and try to get their weed. We followed them and when they parked again Tyler and another guy got out and went to the other car while I stayed with my car.

When Tyler and the other guy returned to my car they had money and weed taken from the other car.

When Tyler left my car on his way to the other car I did not see him take his gun out of his backpack and I did not see him get out of the car with a gun. The backpack was in the front seat where Tyler was sitting. I made this statement to the Foster City Police when they were interviewing me.

No one asked me to testify at the trial of Tyler Redick. I was in custody in jail at the time of his trial.

I declare, under penalty of perjury under the laws of the State of California, that all statements in this Declaration are true and correct.

*Id.* Redick included the declaration with his second state habeas petition.

4

## II.  PROCEDURAL BACKGROUND

At trial, the jury convicted Redick of four counts of robbery, Cal. Penal Code § 212.5(c), one count of criminal possession of a firearm while wearing a mask, *id.* § 12040(a), one count of attempted carjacking, *id.* §§ 664, 125(a), one count of grand theft, *id.* § 487(d)(2), and one count of misdemeanor obstruction and resistance of a peace officer, *id.* § 148(a)(1).  The jury also found that he had used a firearm in the robbery, which enhanced his sentence by thirteen years and four months.  *See id.* § 12022.53(b).

Redick appealed, arguing that the trial court made evidentiary and instructional errors and that application of the firearm enhancement constituted cruel and unusual punishment.  *Redick*, 2010 WL 3312901, at *1.  The California Court of Appeal issued the opinion excerpted above, affirming the conviction on all grounds and denying the cruel and unusual punishment claim.  *Id.* The California Supreme Court denied Redick's petition for review.  Answer Ex. F.

On January 20, 2012, Redick filed a petition for writ of habeas corpus in this district, followed by a motion to stay the case pending exhaustion of his state court remedies.  Dkt. No. 2. The motion to stay was granted.  Dkt. No. 6.  In his habeas petition, Redick sought habeas relief on the grounds that:  (i) his sentence constituted cruel and unusual punishment; (ii) his trial counsel provided ineffective assistance; (iii) the prosecution withheld exculpatory evidence until the time of trial; (iv) witnesses at trial testified falsely; and (v) the prosecution knowingly presented the witnesses' false testimony.  Pet. 7B–7F.  On January 23, 2012, Redick filed a habeas petition with the California Supreme Court, asserting the same five claims as his federal petition. Answer Ex. H.  The California Supreme Court denied the petition in a summary order indicating that Redick had failed to state fully and with particularity the facts on which he was seeking relief. Answer Ex. I.

After his first state habeas petition was denied, Redick obtained the declaration from Guinn.  Pet. Ex. A.  With this new evidence, Redick filed a second habeas petition with the California Supreme Court, raising the same five claims as he raised in the first.  Answer Ex. J. The California Supreme Court denied the petition without comment on November 14, 2012.

1    Answer Ex. K.

2     On December 12, 2012, Redick reopened his federal habeas case and filed an amended

3    petition.  Dkt. No. 11.  The amended petition asserts the same five claims as Redick's initial

4    federal habeas petition and his two state habeas petitions.  *Id.*

5    **LEGAL STANDARD**

6     Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Court

7    may entertain a petition for a writ of habeas corpus "on behalf of a person in custody pursuant to

8    the judgment of a State court only on the ground that he is in custody in violation of the

9    Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The Court may grant

10   the petition with respect to any claim that was adjudicated on the merits in state court only if the

11   state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved

12   an unreasonable application of, clearly established Federal law, as determined by the Supreme

13   Court of the United States; or (2) resulted in a decision that was based on an unreasonable

14   determination of the facts in light of the evidence presented in the State court proceeding."

15   *Id.* § 2254(d).

16    As used in subsection (1), "contrary to" and "unreasonable application of" have different

17   meanings.  Under the "contrary to" clause, a federal habeas court may grant relief "if the state

18   court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law

19   or if the state court decides a case differently than [the] Court has on a set of materially

20   indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).

21    A federal habeas court may grant relief under the "unreasonable application" clause if the

22   state court correctly identified the governing legal principle from Supreme Court decisions "but

23   unreasonably applie[d] it to the facts of the particular case."  *Bell v. Cone*, 535 U.S. 685, 694

24   (2002).  The focus of the unreasonable application inquiry is on "whether the state court's

25   application of clearly established federal law is objectively unreasonable, and . . . an unreasonable

26   application is different from an incorrect one."  *Id.*  "[E]ven a strong case for relief does not mean

27   the state court's contrary conclusion was unreasonable."  *Harrington v. Richter*, 131 S. Ct. 770,

28   786 (2011).  A claim for habeas relief from a state prisoner should be denied "so long as

United States District Court
Northern District of California

1  fairminded jurists could disagree on the correctness of the state court's decision." *Id.* (internal

2  quotation marks omitted).

3  **DISCUSSION**

4  **I.  CLAIM ONE: CRUEL AND UNUSUAL PUNISHMENT**

5      Redick claims the thirteen-year sentence imposed as a result of the firearm enhancement

6  statute, Cal. Penal Code § 12022.53(b), was cruel and unusual punishment in violation of the

7  Eighth and Fourteenth Amendments.[6] Pet. 7B; Reply 16.  Because the California Court of

8  Appeal's decision to the contrary was not objectively unreasonable, this claim for relief is

9  DENIED.

10      **A.  Clearly Established Federal Law**

11      In determining whether a sentence for a term of years violates the Eighth Amendment,

12  courts apply a "gross disproportionality principle." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003).

13  "The gross disproportionality principle reserves a constitutional violation for only the

14  extraordinary case." *Id.* at 77.  The Supreme Court has set a high bar for what qualifies as an

15  extraordinary case.  *See id.* at 73-77 (upholding a three-strikes sentence of two consecutive terms

16  of 25 years to life where the third felony was theft of videotapes worth approximately $150);

17  *Ewing v. California*, 538 U.S. 11, 30 (2003) (upholding a three-strikes sentence of 25 years to life

18  where the third felony was theft of three golf clubs worth $399 each); *Harmelin v. Michigan*, 501

19  U.S. 957, 994 (1991) (upholding a mandatory sentence of life without parole for possession of

20  more than 650 grams of cocaine, even though petitioner had no prior felony convictions).

21      **B.  State Court's Ruling**

22      When a lower state court issues a written opinion, an unexplained order from a higher

23  court that upholds the judgment is presumed to rest on the same grounds. *Ylst v. Nunnemaker*, 501

24  U.S. 797, 803 (1991); *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002) ("In determining

25  

26  [6] Cal. Penal Code § 12022.53(b) provides:  "Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a), personally uses a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 10 years.  The firearm need not be operable or loaded for this enhancement to apply."  Cal. Penal Code § 12022.53(b).

27  

28  

United States District Court
Northern District of California

1   whether a state court decision is contrary to federal law, we look to the state's last reasoned

2   decision . . . as the basis for its judgment.").  The California Supreme Court denied Redick's

3   second state habeas petition without issuing a reasoned opinion.  Answer Ex. K.  Thus, the

4   reasoning of the California Court of Appeal's opinion is properly the subject of this Court's

5   habeas review.

6          The California Court of Appeal relied on *Lockyer*, *Ewing*, *Harmelin*, and *Rummel v.*

7   *Estelle*, 445 U.S. 263 (1980), to reject Redick's cruel and unusual punishment claim.  *See Redick*,

8   2010 WL 3312901, at * 9–11.  After discussing the four Supreme Court cases, the court concluded

9   that "the aggregate sentence imposed [on Redick] is shorter than in all the foregoing cases, yet

10  [Redick's] underlying offenses are much more serious than theft and drug possession.  Moreover,

11  [Redick's] personal use of a firearm poses at least an equivalent danger to the public as the

12  recidivism that triggers a 25-years-to-life sentence under the three strikes law."  *Id.*

13         The court rejected Redick's argument that the robbery was merely a single episode of

14  aberrant behavior, and that his personal background and good character should diminish his

15  culpability.  *Id.*  The court stated:

16         "Defendant engaged in some planning, including stealing his father's gun and using
           a bandana to conceal his identity.  He did not merely use a gun to threaten the
17         students he robbed, he used it to strike one of them in the face to force compliance
           with his demands, and punched or pushed one of the others.  The day after the
18         robberies, defendant continued the crime spree by attempting a carjacking to escape
           the police.  Moreover, although defendant had no prior felony convictions he had
19         hardly been living a crime free life:  He had four misdemeanor convictions for
           conduct between April and November 2007 for second degree burglary, vandalism,
20         being drunk in public and appropriation of lost property.  He was also on probation
           when he committed the armed robberies, and other current offenses.  As for the
21         diagnoses of bipolar and attention deficit hyperactivity disorder, these diagnoses
           had been made when defendant was much younger.  Moreover, defendant told the
22         probation officer he had no current mental health issues, and suspected any prior
           issues were caused by medications he stopped taking at age 18.  In sum,
23         defendant's criminal conduct was not an isolated incident. It was planned,
           unprovoked, violent and involved the use of a gun, and he had no mental health
24         issues or other personal characteristics that lessened his culpability."

25         *Id.*

26  **C.  Section 2254(d) Analysis**

27         The California Court of Appeal reasonably determined that Redick's sentence was not

28  grossly disproportionate to his crimes.  Redick maintains that his thirteen-year sentence is grossly

United States District Court
Northern District of California

1   disproportionate, especially in light of his personal background, including "his youth at the time of

2   the offense, his suffering from bipolar and hyperactivity disorders, his dysfunctional family

3   background, the lack of a prior felony record, and his good character and conduct and positive

4   attitude, as established in connection with his sentencing."  Pet. 7B.  However, the Court of

5   Appeal rejected this very argument, observing that the sentence imposed on Redick was shorter

6   than that imposed on the defendants in *Ewing* and other Supreme Court cases, while Redick's

7   crimes were graver and posed a higher danger to the public.  *Redick*, 2010 WL 3312901, at *9–10.

8   The court also found that Redick's conclusory allegations of "good character and conduct and

9   positive attitude" were not credible.  *Id.*  These were not unreasonable determinations.

10         Redick attempts to distinguish *Lockyer*, *Ewing*, *Harmelin*, and *Rummel* by arguing that the

11   cases are applicable only in situations involving sentences under three-strikes schemes.  Reply 17-

12   18.  Redick is wrong.  First, the defendant in *Harmelin* received a "mandatory sentence of life in

13   prison for possession of 650 grams or more of any mixture containing a schedule 2 controlled

14   substance," not a sentence under a three-strikes scheme.  *See Harmelin*, 501 U.S. at 961 n.1.

15   There is thus little reason to limit *Harmelin* to cases involving three strikes sentences.  Indeed, the

16   Ninth Circuit has applied *Harmelin* in assessing the constitutionality of a statute very similar to

17   section 12022.53(b).  *See United States v. Parker*, 241 F.3d 1114, 1117 (9th Cir. 2001) (relying on

18   *Harmelin* in rejecting Eighth Amendment challenge to sentence imposed under 18 U.S.C. §

19   924(c), a federal firearm enhancement statute).

20         Second, numerous courts have applied the "gross disproportionality principle" reflected in

21   *Lockyer*, *Ewing*, *Harmelin*, and *Rummel* in assessing the constitutionality of sentences that were

22   not imposed under three strikes schemes.  *See, e.g.*, *Beloney v. Hedgpeth*, No. 07-cv-04327-WHA,

23   2009 WL 928145, at *7-8 (N.D. Cal. Apr. 3, 2009); *see also, Frank v. Chavez*, No. 11-cv-05204-

24   YGR, 2014 WL 4313229, at *9 (N.D. Cal. Aug. 29, 2014); *Allen v. Lewis*, Case No. 11-cv-04441-

25   WHO, 2013 WL 6512475, at *7-8 (N.D. Cal. Dec. 12, 2013).  Redick has not presented any

26   authority for applying a different standard to his sentence merely because it is not a three strikes

27   sentence.  The California Court of Appeal's decision to reject Redick's cruel and unusual

28   punishment claim was a reasonable application of federal law.

United States District Court
Northern District of California

United States District Court
Northern District of California

## II.  CLAIM TWO: KNOWING PRESENTATION OF FALSE TESTIMONY

Redick claims that the four robbery victims testified falsely and that the prosecution knew their testimony was false.  Pet. 7E–F.  Specifically, Redick alleges that two of the victims falsely testified that they did not purchase marijuana prior to the robbery, and that two of the victims falsely testified that Redick used a gun to rob them.  Pet. 7E–F. Reply 24–25.[7]  Because Redick's petition does not plausibly demonstrate that the victims testified falsely or that the prosecution knew their testimony was false, this claim is DENIED.

### A.  Clearly Established Federal Law

The knowing use of false evidence to obtain a conviction is unconstitutional under the Fourteenth Amendment.  *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  This prohibition applies even when the testimony in question is only relevant to a witness's credibility.  *Id.*  If the prosecution knowingly presents false testimony, or fails to correct testimony that it knows is false, relief is warranted "if there is *any* reasonable likelihood that the false testimony *could* have affected the judgment of the jury."  *Jackson v. Brown*, 513 F.3d 1057, 1076 (9th Cir. 2008) (emphasis in original) (citations omitted).

To state a claim for the knowing presentation of false testimony, a habeas petitioner must allege specific facts indicating that the prosecution knew the witness testified falsely.  *Morales v. Woodford*, 388 F.3d 1159, 1178-79 (9th Cir. 2004).  The existence of conflicting or inconsistent statements, standing alone, is not enough to show that the prosecution knew a witness testified falsely.  *See United States v. Bingham*, 653 F.3d 983, 995 (9th Cir. 2011) ("Certainly [the witness] made inconsistent statements, but that is not enough for a *Napue* violation."); *United States v. Williams*, 547 F.3d 1187, 1202 n.13 (9th Cir. 2008) ("Although there were inconsistencies in [the witness's] testimony, there was no evidence that the government knowingly presented false testimony."); *United States v. Baker*, 850 F.2d 1365, 1371–72 (9th Cir. 1988) (denying claim that

---

[7] Derek Honig denied that he was in possession of any alcohol, drugs, or marijuana the night of the incident.  Reply 24; Trial Tr. Vol. 1 at 154.  Randy Rios denied stopping anywhere before going to the parking lot where he and the other students were robbed.  Reply 25; Trial Tr. Vol. 2 at 318-19.  The California Court of Appeal's opinion states that "Rios and Martinez were certain [Redick] was the gunman."  *Redick*, 2010 WL 3312901, at *6.

1    prosecution knowingly presented perjured testimony where "the record . . . at most shows only a

2    prior inconsistent statement by [the witness].").

3        **B.  State Court's Ruling**

4        No state court issued an opinion addressing Redick's knowing presentation of false

5    testimony claim.  Redick did not raise the claim in his direct appeal, and although Redick raised it

6    in his first and second state habeas petitions, the California Supreme Court denied the petitions

7    without explanation.  *See* Answer 3, Ex. K.  Section 2254(d) still governs review of these claims,

8    however.  As the Supreme Court has made clear, "determining whether a state court's decision

9    resulted from an unreasonable legal or factual conclusion does not require that there be an opinion

10   from the state court explaining the state court's reasoning."  *Harrington*, 131 S. Ct. at 784.  In

11   such situations, the federal habeas court must "determine what arguments or theories . . . could

12   have supported . . . the state court's decision," and then "ask whether it is possible fairminded

13   jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

14   decision of [the Supreme] Court."  *Id.* at 786.

15       "[R]eview under section 2254(d)(1) focuses on what a state court knew and did."  *Cullen v.*

16   *Pinholster*, 131 S. Ct. 1388, 1399 (2011); *see also, Nunes v. Mueller*, 350 F.3d 1045, 1053 (9th

17   Cir. 2003) ("We first examine precisely what the state court did.").   Accordingly, I begin by

18   determining what the California Supreme Court did when it summarily denied Redick's knowing

19   presentation of false evidence claim.

20       When the California Supreme Court issues a summary denial of a habeas petition, it is

21   assumed to have applied the correct law.  *See Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)

22   (holding that state courts must be "given the benefit of the doubt" and presumably "know and

23   follow the law").  The court's decision thus cannot be "contrary to" federal law, because the court

24   presumably applied the correct Supreme Court precedent.  *See id.*  However, a summary denial

25   may involve an "unreasonable application" of clearly established law – that is, the California

26   Supreme Court may have applied the correct precedent "but unreasonably applie[d] it to the facts

27   of the particular case."  *Bell*, 535 U.S. at 694.  A summary denial may also be "based on an

28   unreasonable determination of the facts in light of the evidence presented" to the court.  28 U.S.C.

United States District Court
Northern District of California

11

1  § 2254(d).

2    The summary denial of a habeas petition by the California Supreme Court reflects a

3  determination that "the claims made in the petition do not state a prima facie case entitling the

4  petitioner to relief." *Pinholster*, 131 S. Ct. at 1403 n.12.  To state a prima facie case for relief, the

5  petitioner must: (1) allege that he is illegally imprisoned; (2) state "with particularity the facts on

6  which relief is sought;" and (3) "include copies of reasonably available documentary evidence

7  supporting the claim, including pertinent portions of trial transcripts and affidavits or

8  declarations." *People v. Duvall*, 9 Cal.4th 464, 474 (1995).  The court generally assumes the truth

9  of the allegations in the petition, but "[c]onclusory allegations made without any explanation of

10  the basis for the allegations do not warrant relief, let alone an evidentiary hearing." *Id.*  The court

11  will also "review the record of the trial . . . to assess the merits of the petitioner's claims." *In re

12  Clark,* 5 Cal.4th 750, 770 (1993); *see also*, *Cullen*, 131 S. Ct. at 1403 n.12.

13    If the California Supreme Court determines that a petition fails to state a prima facie case

14  for relief, "the court will summarily deny the petition." *Duvall*, 9 Cal.4th at 475.  "If, however,

15  the court finds the factual allegations, taken as true, establish a prima facie case for relief, the court

16  will issue an [order to show cause, or] OSC." *Id.*  "Issuance of an OSC . . . indicates the . . .

17  court's preliminary assessment that the petitioner would be entitled to relief if his factual

18  allegations are proved." *Id.*

19    Redick's knowing presentation of false evidence claims were summarily denied without

20  issuance of an OSC, meaning that  the California Supreme Court concluded his claims failed to

21  state a prima facie case for relief.  *See* Answer 3, Ex. K.  Thus, the question I must answer is

22  whether there are any arguments or theories that were not an unreasonable application of clearly

23  established federal law, or an unreasonable determination of the facts, upon which the California

24  Supreme Court could have concluded that Redick's factual allegations in support of his knowing

25  presentation of false evidence claims, taken as true, did not establish a prima facie case for relief.

26  *See Nguyen v. Dickenson*, No. 11-cv-03324-WHA, 2013 WL 431587, at *8 (N.D. Cal. Feb. 1,

27  2013) ("In the instant case, the [California Supreme Court] summarily dismissed the habeas

28  petition and request for an evidentiary hearing without issuing an order to show cause . . . [Thus,]

United States District Court
Northern District of California

1   this Court's review will consider whether the state court's rejection of petitioner's habeas claims

2   without issuing an order to show cause was unreasonable, where it is presumed that the state court

3   took petitioner's factual allegations as true.); *Beames v. Chappell*, No. 10-cv-01429, 2013 WL

4   5754938, at *12 (E.D. Cal. Oct. 23, 2013) ("In evaluating [petitioner's] claims, this Court

5   examines whether the California Supreme Court's decision to deny his claims without the issuance

6   of an OSC or further factual development constituted an objectively unreasonable application of

7   clearly established federal law or an unreasonable determination of the facts.").

8   **C.  Section 2254(d) Analysis**

9   Redick argues the prosecution knew the two witnesses lied because Guinn told the police

10  that the four victims purchased marijuana before the robbery and that Redick left his gun in his

11  backpack during the robbery.  Pet. 7F.  The government responds that Redick's petition does not

12  plausibly demonstrate that the prosecution knew either that the victims had purchased marijuana

13  or that Redick had not used a gun.  Answer 29.

14  The government is correct.  At most, Redick's petition shows that the prosecution was

15  aware of conflicting statements.  The victims told the police that they did not purchase marijuana

16  before the robbery; Guinn told the police that they did.  Reply 24; Trial Tr. Vol. 1 at 18-19.  The

17  victims testified that Redick used a gun in the robbery; Guinn told the police that Redick did not.

18  Pet. Ex. A.  Such conflicting statements, standing alone, are not enough to support a claim for

19  knowingly presenting false testimony.  *See, e.g.*, *Morales*, 388 F.3d at 1179; *Baker*, 850 F.2d at

20  1371–72.  The California Supreme Court reasonably determined that this claim does not state a

21  prima facie case for relief.

22  **III.  CLAIM THREE: INEFFECTIVE ASSISTANCE OF COUNSEL**

23  Redick argues that his trial counsel, Jeff Boyarsky, provided ineffective assistance for three

24  reasons:  (i) Boyarsky failed to timely obtain the surveillance video taken the night of the robbery

25  and the handwritten notes the police seized from Redick's personal belongings; (ii) Boyarsky

26  failed to locate and interview the potential witnesses who were visible in the surveillance video;

27  and (iii) Boyarsky did not interview Guinn or proffer him as a witness at trial.  Pet. 9–10.  The

28  California Supreme Court could have reasonably determined that none of these alleged failures

United States District Court
Northern District of California

13

United States District Court
Northern District of California

1  constitute ineffective assistance of counsel.  Accordingly, Redick's ineffective assistance of

2  counsel claims are DENIED.

3      **A.  Clearly Established Federal Law**

4      To prevail on an ineffective assistance of counsel claim, a petitioner must show (i) that his

5  counsel's performance was objectively deficient, and (ii) that this deficient performance

6  prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

7      Deficient performance requires a showing that counsel's representation fell below an

8  objective standard of reasonableness as measured by prevailing professional norms.  *Wiggins v.*

9  *Smith*, 539 U.S. 510, 521 (2003).  I look to the standard practices in the relevant area at the time of

10  representation to determine whether counsel's practices meet prevailing professional norms.  *See*

11  *Cullen*, 131 S. Ct. at 1407; *see also*, *Wiggins*, 539 U.S. at 523 ("In assessing counsel's

12  investigation, we must conduct an objective review of their performance, measured for

13  reasonableness under prevailing professional norms, which includes a context-dependent

14  consideration of the challenged conduct as seen from counsel's perspective at the time.") (internal

15  citations omitted).  It is the petitioner's burden to show "that counsel made errors so serious that

16  counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

17  *Strickland*, 466 U.S. at 687.

18      To establish prejudice, the petitioner "must show that there is a reasonable probability that,

19  but for counsel's unprofessional errors, the result of the proceeding would have been different."

20  *Cullen*, 131 S. Ct. at 1403 (internal quotation marks omitted).  The question is whether the

21  deficient performance resulted in a probability of error "sufficient to undermine confidence in the

22  outcome" of the trial.  *Id.* (internal quotation marks omitted).  "That requires a substantial, not just

23  conceivable, likelihood of a different result."  *Id.* (internal quotation marks omitted).

24      Review of a defense counsel's actions is highly deferential.  There is "a strong

25  presumption that counsel's representation was within the wide range of reasonable professional

26  assistance."  *Harrington*, 131 S. Ct. at 787 (internal quotation marks omitted).  A petitioner

27  seeking to overturn his conviction for ineffective assistance of counsel "must overcome the

28  presumption that, under the circumstances, the challenged action might be considered sound trial

strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted).  Further, "[t]he standards created by *Strickland* and [AEDPA] are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 131 S. Ct. at 788.  In considering an ineffective assistance of counsel claim from a state prisoner, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id.* at 785.

### B.  State Court's Ruling

The California Supreme Court summarily denied Redick's ineffective assistance of counsel claims without issuing a written opinion.  No lower state court issued a written opinion regarding these claims either.  Accordingly, as discussed above, I must determine "whether the state court's rejection of [Redick's ineffective assistance of counsel] claims without issuing an order to show cause was unreasonable, where it is presumed that the state court took [Redick's] factual allegations as true." *Nguyen*, 2013 WL 431587, at \*8.  In making this determination, I must consider "what arguments or theories . . . could have supported . . . the state court's decision," and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington*, 131 S. Ct. at 786.

### C.  Section 2254(d) Analysis

#### 1.  Failure to Timely Obtain Evidence

Redick argues that Boyarsky provided ineffective assistance by failing to timely obtain the surveillance video taken the night of the robbery and the handwritten notes the police seized from Redick's personal belongings.[8]  Pet. 7B–7D.

This argument fails because it is conclusory and unsupported by specific factual allegations.  *See Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995) (denying ineffective assistance of counsel claim where habeas petitioner's "conclusory suggestions that his trial . . . counsel provided ineffective assistance fall far short of stating a valid claim of constitutional violation");

---

[8] The petition is unclear which notes Redick refers to here.  Presumably, they were either the notes in Redick's journal that described his plans to commit a robbery while wearing a mask or the notes that urged potential witnesses to say that "it wasn't [him] by any means necessary!" *Redick*, 2010 WL 3312901, at \*1-3.

United States District Court
Northern District of California

*James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."). Redick asserts the video and notes were not timely obtained, but he does not state when the video and notes were obtained, when they should have been obtained, or why Boyarsky is at fault for not obtaining them sooner. *See* Pet. 7B–7D. The record is also silent on these issues. As the government points out, "absolutely nothing in the record states or [implies] that trial counsel did not have access to the [video or notes] in a timely fashion." Answer 19.

In addition, Redick fails to explain with any degree of particularity how earlier access to the video or notes would have aided his defense. *See* Pet. 7B–7D. Redick asserts that if the evidence had been "timely obtained," then Boyarsky "would have noted inconsistencies and issues which required further investigation" and "would have been able to impeach the false, contradictory, and misleading statements of various prosecution witnesses." Pet. 7C. But Redick does not specify what otherwise unknown inconsistencies or issues would have been revealed, what additional investigative steps Boyarsky would have taken, or what impeachment questions Boyarsky would have asked had the video or notes been obtained any sooner.

Moreover, to the extent this claim is based on the allegation that Boyarsky failed to use the video to show that Reddick did not use a gun during the robbery, the claim fails because the record indicates that Boyarsky in fact used the video to argue that Redick did not use a gun during the robbery. *See* Answer 21, Ex. B at 923. During closing argument, Boyarsky stated: "[I]t is a good thing that we have this recording of it because never in it do you see [Redick] with a gun. Look at it as much as you want. You can look at the still photos. We have all looked at all that is involved in the case on several occasions and I challenge you to find [Redick] in possession of a gun." *Id.* Redick cannot prevail on an ineffective assistance counsel claim based on Boyarsky's failure to use the surveillance video to show that Redick did not use a firearm in the robbery, when Boyarsky in fact used the video for that very purpose.

**2. Failure to Locate and Interview the Bystanders in the Surveillance Video**

Redick argues that Boyarsky should have located and interviewed the two bystanders in the surveillance video because they would have testified that they did not see Redick use a gun

United States District Court
Northern District of California

1    during the robbery. Pet. 7D. This claim fails because the California Supreme Court could have

2    reasonably determined that failing to locate and interview the bystanders was neither deficient

3    performance nor prejudicial to Redick's case.

4         A defense attorney "has a duty to make reasonable investigations or to make a reasonable

5    decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. In line

6    with this principle, courts "allow lawyers considerable discretion to make strategic decisions about

7    what to investigate, but only after those lawyers have gathered sufficient evidence upon which to

8    base their tactical choices." *Duncan v. Ornoski*, 528 F.3d 1222, 1235 (9th Cir. 2008) (internal

9    quotation marks and emphasis omitted). "The failure to investigate is especially egregious when a

10   defense attorney fails to consider potentially exculpatory evidence." *Rios v. Rocha*, 299 F.3d 796,

11   805 (9th Cir. 2002). "A lawyer who fails adequately to investigate, and to introduce into

12   evidence, information that demonstrates his client's factual innocence, or that raises sufficient

13   doubt as to that question to undermine confidence in the verdict, renders deficient performance."

14   *Lord v. Wood*, 184 F.3d 1083, 1093 (9th Cir. 1999) (internal quotation marks and modifications

15   omitted).

16        On the other hand, "the duty to investigate and prepare a defense is not limitless."

17   *Hamilton v. Ayers*, 583 F.3d 1100, 1129 (9th Cir. 2009) (internal quotation marks omitted). The

18   duty "does not necessarily require that every conceivable witness be interviewed or that counsel

19   . . . pursue every path until it bears fruit or until all conceivable hope withers." *Id.* Additionally,

20   where a petitioner bases an ineffective assistance of counsel claim on the failure to interview or

21   call a particular witness, the petitioner must identify the witness and allege what the witness's

22   testimony would have been and how it might have changed the outcome of the proceeding. *See*

23   *Dows v. Wood*, 211 F.3d 480, 486-87 (9th Cir. 2000); *United States v. Berry*, 814 F.2d 1406, 1409

24   (9th Cir. 1987); *see also, Sauls v. Valenzuela*, No. 13-cv-02125, 2014 WL 3870491, at *14 (C.D.

25   Cal. July 8, 2014); *Dorsett v. Uribe*, No. 10-cv-06605, 2013 WL 3223387, at *11 (C.D. Cal. June

26   21, 2013). The petitioner must also show that the witness was available at the time of trial and

27   willing to testify. *See United States v. Harden*, 846 F.2d 1229, 1231-32 (9th Cir. 1988); *see also,*

28   *Chafford v. Hedgpeth*, No. 09-cv-01574-PJH, 2013 WL 791320, at *3 (N.D. Cal. Mar. 4, 2013)

("Where there is no evidence that an individual will testify at trial, defense counsel's failure to call the witness does not constitute ineffective assistance of counsel."); *Galloway v. Adams*, No. 03-cv-04096-JSW, 2007 WL 295552, at *12 (N.D. Cal. Jan. 30, 2007) (denying petitioner's claim that counsel provided ineffective assistance of counsel by failing to call petitioner's codefendant where "there is no evidence in the record to suggest [the codefendant] would have testified at trial"); *Murphy v. Smith*, No. 96-cv-02429-MHP, 1997 WL 765956, at *3 (N.D. Cal. Nov. 14, 1997) ("[Petitioner's] claim that counsel was ineffective in not interviewing and calling witnesses is inadequate because he has not shown that the witnesses were willing to testify or explained how their testimony would have changed the result of the proceeding.").

Redick's petition does not satisfy these requirements. There is no indication that the bystanders were reasonably locatable. According to the record, the bystanders' only connection to the case was their brief appearance in the surveillance video. Redick does not provide their names or any other information regarding their identities. Even if the bystanders were locatable, there is no indication that they would have been willing to testify. Redick's petition does not include a declaration from the bystanders or any other evidence suggesting that they would have been willing to testify. Nor does Redick allege that the bystanders would have testified. Further, even if the bystanders had testified, it is not clear what their testimony would have been. Redick states that the bystanders' demeanor in the surveillance video "remains undisturbed, indicating that they weren't seeing anything unusual." Pet. 7D. Redick claims this demonstrates he did not use a gun in the robbery. *Id.* But the bystanders' undisturbed demeanor could have been due to any number of circumstances, including that they did not notice the robbery or realize it was taking place. In other words, the bystanders' undisturbed demeanor does not adequately demonstrate what their testimony would have been or how it might have changed the outcome of the proceeding. *See Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001) (denying ineffective assistance of counsel claim where petitioner did "nothing more than speculate that, if interviewed, [the alleged witness] might have given information helpful to [the defense]").

In light of these inadequacies in Redick's petition, the California Supreme Court could have reasonably concluded that this claim does not state a prima facie case for relief.

United States District Court
Northern District of California

### 3.  Failure to Interview Jake Guinn

Finally, Redick argues that Boyarsky provided ineffective assistance because he did not interview Jake Guinn.  Pet. 7D.[9]  Like the preceding claim, this argument fails because the California Supreme Court could have reasonably concluded that Redick has not plausibly demonstrated that Guinn was willing to testify at trial.

Although Redick's second state habeas petition includes a declaration from Guinn, the declaration does not state that Guinn would have testified at Redick's trial.  *See* Pet. Ex. A.  Guinn states that "no one asked me to testify at [Redick's] trial" and that he "was in custody in jail at the time of [the] trial."  *Id.*  But Guinn does not state that he would have testified if asked to do so.  Nor is there any allegation in Redick's petition that Guinn would have been willing to testify.  Redick alleges that Boyarsky "never contacted Jake Guinn and never learned what [Guinn] knew," but Redick does not allege that Guinn would have agreed to testify if Boyarsky had contacted him.  *See* Pet. 7B-7D.  Indeed, if anything, Redick's second state habeas petition suggests that Guinn would have refused to provide the testimony he now sets forth in his declaration.  *See* Answer Ex. J at 6J-6K.  In a portion of the petition dedicated to explaining why a declaration from Guinn was not presented sooner, Redick explains:

> Petitioner's father was able to obtain the declaration only after undertaking considerable efforts to locate, contact, and talk with declarant Guinn.  *Declarant Guinn was at first reticent to get involved, and then reticent to provide a declaration.*  Over time, petitioner's father made contact with declarant Guinn and spoke with him to seek any information declarant Guinn had regarding the events surrounding the robbery and regarding the allegations that petitioner had used a gun in connection with the robbery, and to try to persuade Mr. Guinn to come forward with the information he had.
>
> While petitioner obviously knew earlier of declarant Guinn's involvement in the robbery as the driver, *petitioner did not know, until recently, that declarant Guinn was willing to come forward and provide information regarding the robbery and the events before and after the robbery*, and he could not reasonably have known this, in large part because petitioner has not had contact with Mr. Guinn since petitioner was arrested in 2008.  Nor did petitioner know (nor could he reasonably

---

[9] Redick argues that Boyarsky "never contacted Jake Guinn and never learned what [Guinn] knew, thereby failing to obtain the information regarding the lack of a gun and the presence of marijuana in connection with the robbery. [Boyarsky] presented no witnesses at trial and introduced no exhibits into evidence."  Pet. 7D.

United States District Court
Northern District of California

1    have known) that declarant Guinn would be willing to set forth in a declaration,
     under oath, the facts that he knew. *Petitioner fully believed that since Mr. Guinn*
2    *was a co-perpetrator of the robbery he would decline to come forward and*
     *provide a statement regarding what he knew*, particularly given that he remained
3    on probation.  Additionally, while petitioner knew of Mr. Guinn's involvement in
     the robbery, petitioner did not know and could not reasonably have known that
4    Mr. Guinn knew [the facts stated] in his declaration.

5    *Id.* (emphasis added).  Given Redick's failure to plausibly demonstrate that Guinn would have

6    been willing to testify, the California Supreme Court could have reasonably concluded that this

7    claim does not state a prima facie case for relief.  *See Harden*, 846 F.2d at 1231-32.

8            The California Supreme Court also could have reasonably determined that Guinn's

9    testimony would not have affected the outcome of Redick's trial.  Guinn's testimony was

10   equivocal at best.  Guinn does not state in his declaration that he witnessed the robbery and that

11   Redick did not use a gun in committing it.  Rather, Guinn states only that "[w]hen [Redick] left

12   my car on his way to the other car I did not see him take his gun out of his backpack and I did not

13   see him get out of the car with a gun."  Pet. Ex. A.  Weighing against this testimony would have

14   been the victims' testimony that they "were '100 percent' certain" Redick was the one with the

15   gun, and that the .357-Magnum apparently taken from Redick's father and found in a backpack

16   apparently belonging to Redick "looked exactly" like the gun Redick used to rob them.  *Redick*,

17   2010 WL 3312901, at *2-3.  The government also presented testimony from Redick's girlfriend,

18   Jessica, who stated that Redick "mentioned a gun" the morning after the robbery and that "she

19   understood him to mean he used a gun to scare someone."  *Id.* at *2 (internal quotation marks and

20   modifications omitted).  The California Supreme Court could have reasonably concluded that

21   Guinn's equivocal testimony, weighed against the considerable evidence that Redick used a gun in

22   the robbery, was not reasonably likely to affect the jury's finding under the firearm enhancement

23   statute.  *See Cullen*, 131 S. Ct. at 1403 (prejudice means "a substantial, not just conceivable,

24   likelihood of a different result").

25

26

27

28

1

## CONCLUSION

2          For the foregoing reasons, Redick's petition for writ of habeas corpus is DENIED.  I will

3   not issue a certificate of appealability.  Reasonable jurists would not "find the district court's

4   assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel,* 529 U.S. 473,

5   484 (2000).  Redick may seek a certificate of appealability from the Ninth Circuit Court of

6   Appeals.  The Clerk shall enter judgment for respondent and close the file.

7          **IT IS SO ORDERED**.

8   Dated: December 12, 2014

9                                                        

10                                                        _____
                                                        WILLIAM H. ORRICK
                                                        United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California